## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**FRONTIER MERGER SUB,
LLC, a Texas Limited Liability
Company and CASH AMERICA
EAST, INC., a Florida Corporation,**

**Case Number:**

    **Plaintiffs,**

**vs.**

**AMERICAN PAWN AND JEWELRY,
INC. d/b/a GODFATHER PAWN IV,
a Florida Corporation, MARC NICOSIA,
an individual, RALPH SOUSSOU, an
individual and LUIS QUILES, an
individual,**

    **Defendants.**

_____

## <u>COMPLAINT</u>

## INJUNCTIVE RELIEF REQUESTED

Comes Now, FRONTIER MERGER SUB, LLC ("FRONTIER") and CASH

AMERICA EAST, INC. ("CASH AMERICA EAST") (Collectively referred to as

"Plaintiffs") by and through its undersigned counsel and hereby sues AMERICA

PAWN AND JEWELRY, INC. d/b/a GODFATHER PAWN IV ( "GODFATHER

PAWN"), MARC NICOSIA ("NICOSIA"), RALPH SOUSSOU ("SOUSSOU"),

and LUIS QUILES ("QUILES") (Collectively referred to as "Defendants") for

federal trademark infringement, unfair competition, unfair competition under Florida common law, deceptive and unfair trade practices, and tortious interference and alleges as follows as grounds:

## NATURE OF THE ACTION

1.      This action arises from Defendants' use of Plaintff, FRONTIER's Registered Trademark CASH AMERICA® in conducting business in competition with Plaintiffs in the same geographical area for services virtually identical to services offered by Plaintiffs.  Through this action, FRONTIER seeks injunctive and other relief under the Federal Trademark Act of 1946, 15 U.S.C. § 1051, et seq. ("Lanham Act") for trademark infringement and unfair competition, and CASH AMERICA EAST seeks injunctive and other relief under Florida common law for unfair competition, deceptive and unfair trade practices, and tortious interference based on Defendants' actions. FRONTIER seeks to prevent further use of its CASH AMERICA® trademark by Defendants and to recover damages arising from Defendants' repeated willful and bad faith conduct.

## PARTIES, JURISDICTION AND VENUE

2.      FRONTIER is a Texas Limited Liability Company with its principal place of business located at 1600 West 7th Street, Fort Worth, TX 76102.

3.      CASH AMERICA EAST is a Florida Corporation with a principal place of business located at 1600 West 7th Street, Fort Worth, TX 76102.

4.    GODFATHER PAWN is a Florida Corporation with a principal place of business located at 5520 East Colonial Drive, Orlando, FL 32807.

5.    MARC NICOSIA is a resident of the State of Florida residing in Orange County, Florida.

6.    RALPH SOUSSOU is a resident of the State of Florida residing in Orange County, Florida.

7.    LUIS QUILES is a resident of the State of Florida residing in Orange County, Florida.

8.    This Court has subject matter jurisdiction of this cause pursuant to 28 U.S.C. §§1331 and 1338 because this action arises under the Lanham Act, specifically 15 U.S.C. §§1114 and 1125(a).

9.    This Court has personal jurisdiction over the Defendants pursuant to Fla. Stat, §48.193(1)(a)(1) and (2) because Defendant GODFATHER PAWN is incorporated in the State of Florida, maintains its principal place of business in Orange County, Florida, is operating, conducting and engaging in business in this State, and has committed tortious acts within this State, which has harmed Plaintiffs in this State.  Defendants NICOSIA, SOUSSOU and QUILES are all residents of this State, are engaging in a business activity in this State, and have committed multiple torts in this State, which have caused injury to Plaintiffs in this State.

10.    Venue is proper in this judicial district under 28 U.S.C. §1391 because the Defendants have committed acts of trademark infringement, unfair competition, deceptive and unfair trade practices and tortious interference in this judicial district and a substantial portion of the events giving rise to the claims herein arose in this judicial district where Plaintiff CASH AMERICA EAST is located and incorporated and was injured, and because the Defendants all reside in this District.

## BACKGROUND

7.    FRONTIER is a wholly owned subsidiary of FirstCash, Inc., the leading international operator of pawn stores with more than 2,800 retail pawn and consumer lending location in 25 different states and in a few countries in South America as well.

8.    CASH AMERICA EAST owns and operates 86 pawn stores located in the State of Florida.

9.    FRONTIER is the owner of a Registered Service Mark for its CASH AMERICA® logo shown below, issued by the USPTO, in International Class 35, for "retail store services featuring jewelry, electronics, cameras, musical instruments, games systems, video games, DVDs, firearms, power tools and house tools and law equipment; Tax filing services; and scrap gold dealership services and gold buying services" (Registration No. 4,353,406) with a first use in commerce date of April, 2005.   A true and correct copy of the Certificate of Registration is attached

4

hereto and incorporated herein as Exhibit A.



10.    FRONTIER is also the owner of a Registered Service Mark for its Word Mark CASH AMERICA, issued by the United States Patent and Trademark Office, in International Class 35, for "retail store services featuring jewelry", in International Class 36 for "financial services, namely, check cashing, money lending services, money order services, electronic funds transfer services, and bill payment services" (Registration No. 3,250,793) with a first use in commerce date of April 11, 1985 for both classes.  A true and correct copy of the Certificate of Registration is attached hereto and incorporated herein as Exhibit B (Exhibits A and B are collectively referred to as the "CASH AMERICA Marks").

11.    Cash America International, Inc. a Texas Corporation was the original registrant of the CASH AMERICA Marks and in 2016 Cash America International, Inc. merged with Frontier Merger Sub, LLC, thus making FRONTER the owner of all rights, titles and interests in and to the CASH AMERICA Marks and thus stepping into the shoes of Cash America International, Inc.

12.    Through Cash America International, Inc. first from 1985-2016 and

FRONTIER from 2016-today, the CASH AMERICA Marks have been used all across the United States and have acquired considerable good will by reason of the continuous and exclusive use of the mark in interstate commerce for the past thirty-seven (37) years.

13.    Cash America International, Inc. and FRONTIER have expended significant sums of money to promote and advertise its business under the CASH AMERICA® word mark and logo from at least 1985 until the present.

14.    In fact, CASH AMERICA has become one of the most well-known pawn shops in the United States.

15.    Plaintiff, CASH AMERICA EAST is a wholly owned subsidiary of FRONTIER and is the operating entity for all 86 CASH AMERICA stores in the State of Florida and 8 CASH AMERICA stores in the State of Alabama.

16.    CASH AMERICA EAST is a licensee of the CASH AMERICA Marks.

17.    CASH AMERICA EAST owned and operated a CASH AMERICA pawn store located at 591 South Semoran Blvd. Winter Park, Florida 32792 from 3/16/2007 to 3/25/2022.

18.    In March 31, 2022 the CASH AMERICA located at 591 South Semoran's lease expired.  As a result, CASH AMERICA EAST decided to close down the store and move to a new location at 6424 East Colonial Drive, Orlando,

Florida 32807, which is just a short 6 minute drive from the prior location.

19.    At the time of the move, the 591 South Semoran store still had in its possession pawned items that belong to customers, which were being moved to the new location. Because of this, the store manager and district manager posted signs on the outside of the store to inform customers of their move. Otherwise, the customers may not have known where their belongings were and/or how and where they needed to pay off their loans. True and correct copies of the signs are attached hereto as Exhibit C and examples are also shown below for illustration purposes.

 

20.    These signs were posted by the store manager and district manager for the South Semoran Store for the first time on March 7, 2022, and then again on April 8th, April 11th, April 13th, April, April 15th, twice on April 16th and again on April 18th.. All of the April postings occurred in 2022.

21.    The reason the signs had to be posted multiple times is because on April 8th, April 9th, April 12th, April 14th, twice on April 15th and on April 16th, 2022, the CASH AMERICA EAST signs (Exhibit C) were replaced with signs by Defendants which bore both the CASH AMERICA® logo and the GODFATHER PAWN mark.

22.    The signs posted by Defendants on the outside of the store improperly use the CASH AMERICA® logo and are confusing customers by stating that CASH AMERICA® is closed and "You can come see us at GODFATHER PAWN".  True and correct copies of the signs are attached hereto as Exhibit D and an example is also shown below for illustration purposes.



23.    Multiple customers have gone to the GODFATHER PAWN location at 5520 East Colonial Drive believing that it is somehow associated with CASH AMERICA and believing that their pawned personal items are at GODFATHER

PAWN and/or their loans are now with GODFATHER PAWN. Such customers have called customer service for CASH AMERICA informing Plaintiffs that they were confused about the signs and that they went to GODFATHER PAWN thinking that their loans and/or belongings were now with GODFATHER PAWN.

24.    Many of these customers drove from the South Semoran location to GODFATHER PAWN as a result of the signs (Exhibit D) and when they arrived the employees at GODFATHER PAWN coerced some of the customers to take out the loan with GODFATHER PAWN letting the customers know that they will go to the CASH AMERICA store located on E. Colonial and pay their loans off and redo the loans with GODFATHER for no interest for the first month and 5% on the second month.

25.    The only reason the customers are visiting GODFATHER PAWN is because of the confusing and deceptive signs (Exhibit D) and then once the customer is in the GODFATHER PAWN store, they are being tortiously interfered with resulting in a significant loss of business to CASH AMERICA EAST.

26.    As a result of this repeated deceptive and unfair conduct, Plaintiffs sent a cease-and-desist letter to GODFATHER PAWN on April 11, 2022 demanding that this conduct stop.  A true and correct copy of the cease-and-desist letter is attached hereto as Exhibit E.

27.    Plaintiffs did not receive a response from GODFATHER PAWN and

after Plaintiffs' signs continued to be taken down and replaced with Defendants' signs even after receiving the letter, Regional Manager for CASH AMERICA EAST, Mike Little, drove to GODFATHER PAWN on April 19, 2022, and hand delivered the letter to QUILES and asked that he stop removing Plaintiffs' signs. In response, QUILES just laughed and dismissed the letter. Mr. Little encouraged QUILES to stop posting the signs and QUILES just waved and continued to walk away.

28.     QUILES, the Store Manager for the GODFATHER PAWN located on E. Colonial Drive is the former store manager for the CASH AMERICA located at South Semoran Blvd.

29.     A photograph of QUILES taking down Plaintiffs' signs and putting up Defendants' signs is attached hereto as Exhibit F and a close up of the actual signs being put up is attached hereto as Exhibit G.

30.     QUILES also admitted in a text message with Armando Barrientes, the store manager for the South Semoran location and now the E. Colonial Drive location, that QUILES is the one taking down the signs and threatened to shut down the E. Colonial drive store. True and correct copies of the text messages are attached hereto as Exhibit H.

31.     In addition to QUILES, GODFATHER PAWN employs multiple other former Cash America employees, some of whom were previously let go from Cash

America for inappropriate conduct.

32.     The two owners, NICOSIA and SOUSSOU, are both former employees of CASH AMERICA EAST and upon information and belief, they are the driving force behind the infringement and tortious conduct.

33.     GODFATHER PAWN also has at least four other employees who were former multi-unit District Managers of CASH AMERICA, namely, Carlos Bellorin, Ivan Cardenas, Brad Goodwin and Wade Gaudi.

34.     GODFATHER PAWN also has a number of employees who were former store managers or sales associates of CASH AMERICA EAST, namely, Eduardo Correa, Willie Campos and Jose Chevere.

35.     NICOSIA and SOUSSOU are the owners and operators of GODFATHER PAWN and upon information and belief, are the driving force behind the infringement of the CASH AMERICA Marks.

36.     NICOSIA and SOUSSOU both directed and encouraged the infringement of the CASH AMERICA Marks, personally participated in the infringement, and did nothing to stop the infringing activities, the deceptive and unfair trade practices, and the tortious interference.

37.     QUILES also directly participated in the infringing activities, deceptive and unfair trade practices, and tortious interference by personally taking down

Plaintiffs' signs and replacing them with Defendants and interfering with CASH

AMERICA EAST's business by stealing CASH AMERICA EAST's customers.

38.    FRONTIER has not authorized or licensed Defendants to use the CASH

AMERICA Marks nor any confusingly similar derivative of them.

39.    Plaintiffs have performed all condition precedents to be performed by

Plaintiff or the conditions have occurred.

40.    Plaintiffs have been forced to retain the undersigned law firm for

representation in this action.

## COUNT I
## (TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114)

41.    Plaintiff realleges each and every allegation set forth in paragraphs 1

through 40 above, as if fully set forth herein.

42.    This Count alleges trademark infringement pursuant to 15 U.S.C.

§1114.

43.    FRONTIER is the owner of a Registered Service Mark for its CASH

AMERICA® logo shown below, issued by the USPTO, in International Class 35,

for "retail store services featuring jewelry, electronics, cameras, musical

instruments, games systems, video games, DVDs, firearms, power tools and house

tools and law equipment; Tax filing services; and scrap gold dealership services and

gold buying services" (Registration No. 4,353,406) with a first use in commerce date

of April, 2005.   A true and correct copy of the Certificate of Registration is attached hereto and incorporated herein as Exhibit A.



44.    The CASH AMERICA® logo is inherently distinctive and has acquired secondary meaning all across the United States.   The public associates the CASH AMERICA® logo with Plaintiff, FRONTIER.   This is a result of the inherent distinctiveness of the mark and the fact that distinctiveness has acquired through extensive advertising, sales and use in commerce for the past seventeen (17) years.

45.    Despite these well-established rights and without FRONTIER's authorization, Defendants have intentionally used in commerce the CASH AMERICA® logo in identical form to FRONTIER's Registered Mark.

46.    Defendants have used FRONTIER's CASH AMERICA® logo in commerce (Exhibit D) and in connection with the sale, offering for sale, distribution, and/or advertising of identical goods and services to those offered by FRONTIER and CASH AMERICA EAST.

47.    Defendants' infringing use of the CASH AMERICA® logo is likely to confuse or deceive the purchasing public into believing, contrary to fact, that Defendants' business is sponsored, licensed, associated with, or otherwise approved

13

by Plaintiffs.  In fact, incidents of the public being deceived or confused have already occurred.

48.    Defendants' repeated misappropriation even after warning and after receiving the cease-and-desist letter, has been, and continues to be, with the intent to confuse, mistake and deceive consumers as to the source and/or sponsorship of Defendants' products and services.  Accordingly, this is an exceptional case within the meaning of 15 U.S.C. §1117(a).

49.    Unless enjoined, Defendants' infringement has caused and will continue to cause immediate and irreparable injury to FRONTIER.  Accordingly, FRONTIER is entitled to injunctive relief against Defendants under 15 U.S.C. §1116 because the irreparable injury is in an amount not yet ascertainable, and for which FRONTIER has no adequate remedy at law.

50.    As a direct and proximate result of Defendants' conduct, FRONTIER is entitled to damages, treble damages, an accounting, discouragement of all revenues and/or profits wrongfully derived from this infringement and all attorney's fees and costs pursuant to 15 U.S.C. §1117.

WHEREFORE, Plaintiff demands judgment as set forth in the Prayer for Relief.

## COUNT II
## (TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114)

51.    Plaintiff, FRONTIER, realleges each and every allegation set forth in paragraphs 1 through 40 above, as if fully set forth herein.

52.    This Count alleges trademark infringement pursuant to 15 U.S.C. §1114.

53.    FRONTIER is the owner of a Registered Service Mark for its Word Mark CASH AMERICA, issued by the United States Patent and Trademark Office, in International Class 35, for "retail store services featuring jewelry", in International Class 36 for "financial services, namely, check cashing, money lending services, money order services, electronic funds transfer services, and bill payment services" (Registration No. 3,250,793) with a first use in commerce date of April 11, 1985 for both classes.  A true and correct copy of the Certificate of Registration is attached hereto and incorporated herein as Exhibit B.

54.    The CASH AMERICA® word mark is inherently distinctive and has acquired secondary meaning all across the United States.  The public associates the CASH AMERICA® word mark with Plaintiff, FRONTIER.  This is a result of the inherent distinctiveness of the mark and the fact that distinctiveness has acquired through extensive advertising, sales and use in commerce for the past seventeen (17) years.

55.    Despite these well-established rights and without FRONTIER's authorization, Defendants have intentionally used in commerce the CASH AMERICA word mark.

56.    Defendants have used FRONTIER's CASH AMERICA word mark in commerce (Exhibit D) and in connection with the sale, offering for sale, distribution, and/or advertising of identical goods and services to those offered by FRONTIER and CASH AMERICA EAST.

57.    Defendants' infringing use of the CASH AMERICA® word mark is likely to confuse or deceive the purchasing public into believing, contrary to fact, that Defendants' business is sponsored, licensed, associated with, or otherwise approved by Plaintiffs.  In fact, incidents of the public being confused or deceived have already occurred.

58.    Defendants' repeated misappropriation even after being warned and after receiving the cease-and-desist letter, has been, and continues to be, with the intent to confuse, mistake and deceive consumers as to the source and/or sponsorship of Defendants' products and services.  Accordingly, this is an exceptional case within the meaning of 15 U.S.C. §1117(a).

59.    Unless enjoined, Defendants' infringement has caused and will continue to cause immediate and irreparable injury to FRONTIER.  Accordingly, FRONTIER is entitled to injunctive relief against Defendants under 15 U.S.C. §1116

because the irreparable injury is in an amount not yet ascertainable, and for which FRONTIER has no adequate remedy at law.

60.    As a direct and proximate result of Defendants' conduct, FRONTIER is entitled to damages, treble damages, an accounting, discouragement of all revenues and/or profits wrongfully derived from this infringement and all attorney's fees and costs pursuant to 15 U.S.C. §1117.

WHEREFORE, Plaintiff demands judgment as set forth in the Prayer for Relief.

## COUNT III
## (UNFAIR COMPETITION UNDER 15 U.S.C. §1125(a))

61.    Plaintiff, FRONTIER, realleges each and every allegation set forth in paragraphs 1 through 40 above, as if fully set forth herein.

62.    Plaintiff, FRONTIER, adopted the service mark CASH AMERICA at least as early as 1985 in relation to its "retail store services featuring jewelry" in Class 35 and "financial services, namely, check cashing, money lending services, money order services, electronic funds transfer services, and bill payment services" in Class 36.

63.    Plaintiff has used its mark for such services to the consuming public since at least as early as 1985, predating Defendants' use of the CASH AMERICA Marks in its confusing and deceptive signage (Exhibit D).

17

64.    Defendants' unauthorized use of the CASH AMERICA Marks is likely to cause confusion, mistake, or to deceive customers as to FRONTIER's affiliation, connection, association, sponsorship, or approval of Defendants' services and Defendants' GODFATHER PAWN store located just a few miles away from both the South Semoran and E. Colonial Drive CASH AMERICA locations.

65.    Once Defendants' infringing conduct was brought to its attention, Defendants refused to stop using the CASH AMERICA Marks and made a deliberate decision to continue using the infringing marks to advertise, promote, sell, and offer to sell its competing goods and services.

66.    Defendants' use and continued use of the CASH AMERICA Marks within such close proximity has been a willful, intentional, and deliberate, course of action designed specifically to trade upon the goodwill associated FRONTIER's business name and registered service marks.

67.    Defendants' conduct is willful, wanton, and shows a reckless disregard for Plaintiff's rights.

68.    By using the CASH AMERICA Marks and repeatedly replacing Plaintiff's signage (Exhibit C) with Defendants (Exhibit D) and coercing customers into utilizing Defendants' loan services instead of Plaintiff's, Defendants are attempting to unfairly profit from the name, reputation, and advertising of Plaintiff.

69.     Plaintiff has multiple instances of actual confusion such that Plaintiff is being irreparably harmed by Defendants' conduct.

70.     The goodwill acquired in the CASH AMERICA marks is of significant value and harm to such goodwill is irreparable.

71.     Plaintiff has and will continue to sustain damages which include lost income, profits, and business opportunities as well as irreparable harm to its business, reputation and goodwill as a direct and proximate result of Defendants' actions.

72.     Plaintiff has no adequate remedy at law for the acts of infringement and other unlawful acts complained of herein and such acts have caused and will continue to cause damage and irreparable injury to Plaintiff if Defendants are not restrained by this Court from further violations of Plaintiff's rights.

73.     On information and belief, Defendants' actions will continue unless enjoined by this Court.

WHEREFORE, Plaintiff demands judgment as set forth in the Prayer for Relief.

**COUNT IV**
**UNFAIR COMPETITION UNDER FLORIDA COMMON LAW**

74.     Plaintiff, FRONTIER, realleges each and every allegation set forth in paragraphs 1 through 40 above, as if fully set forth herein.

19

75.    Plaintiff, FRONTIER, adopted the service mark CASH AMERICA at least as early as 1985 in relation to its "retail store services featuring jewelry" in Class 35 and "financial services, namely, check cashing, money lending services, money order services, electronic funds transfer services, and bill payment services" in Class 36.

76.    Plaintiff has used its mark for such services to the consuming public since at least as early as 1985, predating Defendants' use of the CASH AMERICA Marks in its confusing and deceptive signage (Exhibit D).

77.    Defendants' unauthorized use of the CASH AMERICA Marks is likely to cause confusion, mistake, or to deceive customers as to FRONTIER's affiliation, connection, association, sponsorship, or approval of Defendants' services and Defendants' GODFATHER PAWN store located just a few miles away from both the South Semoran and E. Colonial Drive CASH AMERICA locations.

78.    Once Defendants' infringing conduct was brought to its attention, Defendants refused to stop using the CASH AMERICA Marks and made a deliberate decision to continue using the infringing marks to advertise, promote, sell and offer to sell its competing goods and services.

79.    Defendants' use and continued use of the CASH AMERICA Marks within such close proximity has been a willful, intentional, and deliberate, course of

action designed specifically to trade upon the goodwill associated FRONTIER's business name and registered service marks.

80.    Defendants' conduct is willful, wanton, and shows a reckless disregard for Plaintiff's rights.

81.    By using the CASH AMERICA Marks and repeatedly replacing Plaintiff's signage (Exhibit C) with Defendants (Exhibit D) and coercing customers into utilizing Defendants' loan services instead of Plaintiff's, Defendants are attempting to unfairly profit from the name, reputation, and advertising of Plaintiff.

82.    Plaintiff suffered multiple instances of actual confusion evidencing Plaintiff is being irreparably harmed by Defendants' conduct.

83.    The goodwill acquired in the CASH AMERICA marks is of significant value and harm to such goodwill is irreparable.

84.    Plaintiff has and will continue to sustain damages which include lost income, profits, and business opportunities as well as irreparable harm to its business, reputation and goodwill as a direct and proximate result of Defendants' actions.

85.    Plaintiff has no adequate remedy at law for the acts of infringement and other unlawful acts complained of herein and such acts have caused and will continue to cause damage and irreparable injury to Plaintiff if Defendants are not restrained by this Court from further violations of Plaintiff's rights.

WHEREFORE, Plaintiff demands judgment as set forth in the Prayer for Relief.

## COUNT V
## <u>DECEPTIVE AND UNFAIR TRADE PRACTICES</u>

86.    Plaintiffs, FRONTIER and CASH AMERICA EAST, reallege each and every allegation set forth in paragraphs 1 through 40 above, as if fully set forth herein.

87.    Fla. Stat. §501.204(1) provides that "unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." The provisions of the Act shall be "construed liberally to promote the protection" of "the consuming public and legitimate business enterprises from those who engage in…deceptive[] or unfair acts or practices in the conduct of any trade or commerce". Fla. Stat. §501.202.

88.    Defendants were, at all times material to the allegations herein, engaged in "trade or commerce" as defined by Fla. Stat. §501.203.

89.    The actions by Defendants described above at paragraphs 19-37 constitute unfair or deceptive acts or practices in violation of Fla. Stat. §501.204.

90.    Defendants' intentional and unjustifiable actions are not only violation of FDUTPA but are also violations of 15 U.S.C. §1114 and 15 U.S.C. §1125(a).

91.     Pursuant to Fla. Stat. §501.2105 and §501.211(2), Plaintiffs are entitled to civil penalties, attorney's fees, prejudgment interest, costs, and damages which are in an amount to be proven at trial.

92.     Pursuant to Fla. Stat. §501.211(1), Plaintiffs are entitled to an injunction against Defendants.

93.     The actions by Defendants described above have damaged Plaintiffs by at least causing Plaintiffs to lose sales and lose loans to Defendants.

WHEREFORE, Plaintiffs demand judgment as set forth in the Prayer for Relief.

## COUNT VI
## TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP

94.      Plaintiffs, FRONTIER and CASH AMERICA EAST, reallege each and every allegation set forth in paragraphs 1 through 40 above, as if fully set forth herein.

95.     Plaintiffs, FRONTIER and CASH AMERICA EAST, have business relationships with the customers that pawned their personal items at the South Semoran Cash America location and with the customers who have loans with the South Semoran Cash America location.

96.     Defendants were readily aware of such business relationships because GODFATHER PAWN consists of at least ten (10) former employees of Plaintiffs

and QULIES, NICOSIA and SOUSSOU were all in upper management for Plaintiffs and even worked at the South Semoran store.

97.    Defendants have all intentionally and unjustifiably interfered with Plaintiffs business relationship with its customers by taking down Plaintiffs' signs (Exhibit C) and replacing them on multiple occasions with Defendants' signs (Exhibit D), by improperly using the CASH AMERICA Marks in its signs, by confusing customers into believing that there was some association between CASH AMERICA and GODFATHER PAWN, and by enticing and coercing the misled customers to do business with GODFATHER PAWN instead of CASH AMERICA EAST and FRONTIER.

98.    Plaintiffs have been damaged as a direct and proximate result of this interference with Plaintiffs' customers by losing such business from such customers.

WHEREFORE, Plaintiffs demand judgment as set forth in the Prayer for Relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, respectfully prays for the following relief against Defendants:

a)    an entry of judgment declaring that Defendants have infringed the CASH AMERICA Marks pursuant to 15 U.S.C. §1114, committed unfair competition under federal law pursuant to 15 U.S.C. §1125(a), committed unfair

competition under Florida common law, committed unfair and deceptive trade practices under Fla. Stat. §501.204, and committed tortious interference with an existing business relationship;

b)      a preliminary injunction, thereafter to be made permanent, which enjoins Defendants, its officers, directors, agents, servants, employees, successors and assigns and all others in concert and privity with it, from using any confusingly similar mark to that of the CASH AMERICA Marks, in connection with its business;

c)      entry of an order requiring Defendants to provide an accounting to Plaintiff for Defendants' profits from any customers that were misled to GODFATHER PAWN as a result of Defendants' signs, and a judgment for the actual damages suffered by Plaintiffs as a result of Defendants' acts of infringement together with interest and costs; and pay for corrective advertising;

d)      entry of an order declaring this case as exceptional, trebling said damages and awarding reasonable attorneys' fees due to the egregious nature of Defendants' acts pursuant to 15 U.S.C. §1117(b);

e)      entry of an order requiring Defendant to file with this Court and serve on Plaintiff's counsel within fourteen days after the service of an injunction, a report, in writing under oath, setting forth in detail the manner and form in which they have complied with the injunction; and

f)      such other and further relief as the Court may be just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a jury trial on all issues so triable as a matter of right.


DATED This 26th day of April, 2022.

Respectfully Submitted,

WOLTER, VAN DYKE, DAVIS PLLC
1900 Summit Tower Blvd., Suite 140
Orlando, FL  32810
Telephone:   (407) 926-7700
Facsimile:    (407) 926-7720
Email: adavis@savvyIPLaw.com
Email: dyau@savvyIPLaw.com
***Attorneys for Plaintiff***

*/s/ Amber N. Davis*
Amber N. Davis
Florida Bar No. 0026628
David Yau
Florida Bar No. 1018284